JOSEPH *v.* RIFFEL.

4-2716

Opinion delivered November 7, 1932.

*Longstreth & Longstreth,* for appellant.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

HUMPHREYS, J. Appellant instituted suit against appellee in the circuit court of Pulaski County, Third Division, to recover damages for an injury received in falling from the first floor of the cold storage plant owned by appellee, to the sub-basement floor through an open elevator shaft, on account of the alleged negligence of appellee in leaving the shaft open, unguarded, unlighted, and in darkness, and without danger sign; and by using the elevator platform as part of the floor of an unguarded and commonly used walkway; and by not informing appellant that the elevator would be used at the time the injury occurred by others than himself.

Appellee filed an answer, denying the material allegations of the complaint, and interposing the additional defenses of contributory negligence and assumed risk by appellant.

The cause was submitted upon the issues joined and the testimony adduced by the parties, at the conclusion of which the court instructed a verdict against appellant, and, in keeping with the verdict, rendered a judgment dismissing appellant's complaint, from which is this appeal.

The facts are undisputed and are, in substance, as follows:

Appellant was, and is one, of the owners and the manager of the Mallard Provision Company. It leased space from appellee in the cold storage plant owned by appellee to store its products on the fourth floor and a room on the top or eighth floor to manufacture specialties and sausage. One of the elevators in the building was six by eight feet, and ran from the bottom to the top of the building through openings that fit it, and was operated by any of the employees of appellee or its tenants, or their employees, indiscriminately. A stairway also led from floor to floor of the building. The main entrance doors of the building opened at seven o'clock A. M. and closed at six o'clock P. M., but there was a side entrance for the admission of tenants and their employees at an earlier hour. The floor openings, or wells, through which this, as well as other elevators in the building, was operated had no railings, guards, lights or danger signs on or about them. When the elevators were not being pulled up and down by some one authorized to use them, they were at a standstill or on a level with the corridor floor, and were used as a part of the walkway for the time being. The construction of the building and conveniences therein were the same on the date appellant's company leased the space in the building as when he received his injury. It was provided in the lease that appellee should furnish "gas, water, light and power for the use of appellant" and to "furnish elevator service to cooler and sausage-making room and all facilities * * * to be available at all times." Appellant's company leased the space on October 31, 1930, and entered into possession thereof January 12, 1931. On February 11, 1931, appellant, together with his employees, entered the build-

ing through the side entrance at an early hour, and, after assigning his employees to their duties in the storage and sausage departments, he entered an elevator on the fourth floor and let himself down to the first floor, where he left the elevator in place and walked out to the platform on the outside of the building for a few moments. During his absence, some one moved the elevator to the fifth floor. Upon his return, thinking that the elevator was where he left it, he stepped into the opening or elevator well without looking, and fell down the shaft twenty-four feet onto the concrete floor of the sub-basement and injured himself. The accident occurred at 6:40 o'clock A. M., just about daylight. There were no lights in the corridor, and appellant made no effort to turn the lights on in the elevator when letting himself down a few moments before the injury.

As between a landlord and tenant, the general rule is that, "in the absence of statute or agreement, the landlord is under no legal obligation to light common passageways for the benefit of tenants." 36 C. J., § 891, p. 214. In § 893 of the same work, it is stated: "On the analogy of a lack of duty on the part of the landlord to light common passageways, it has been held that a landlord is not liable for injury received by tenant through the failure of the landlord to supply rails or guards when the condition was the same at the time of letting."

There is no law requiring that elevator openings in a commercial cold storage plant, constructed for the use of its officers and employees and its tenants and their employees, or to carry commodities from one floor to another, must have rails or guards around them or danger signals upon them, or that the corridors in cold storage plants must have lights in them; and there is nothing in the written lease so requiring. The record is silent as to the necessity for any of these things in the construction or operation of cold storage plants. We cannot indulge the presumption that the shafts or wells in which the elevators were lifted and lowered from floor to floor were improperly constructed because they had no railings

around them or guards or signals upon them, considering the uses for which they were intended, nor can we presume that it constituted negligence to use the elevators as a part of the walkway when on a level with the corridor floors, nor can we presume a necessity for lights in the corridors. Neither the law nor the provisions of the contract made such requirements. Since negligence was not shown on the part of appellee, it is unnecessary to allude to the defenses of contributory negligence or the assumption of the risk by appellant.

The judgment is affirmed.