## Stacy KECK & Mike KECK *v.* AMERICAN EMPLOYMENT AGENCY, INC.

83-75                                                                 652 S.W.2d 2

### Supreme Court of Arkansas
### Opinion delivered May 31, 1983

296

*McMath Law Firm, P.A.*, for appellants.

*Laser, Sharp, Haley, Young & Huckabay, P.A.*, for appellee.

DARRELL HICKMAN, Justice. Mrs. Keck, the appellant, sued the American Employment Agency, the appellee, for damages alleging that the agency was negligent in directing her to a prospective employer who abducted and raped her. At the conclusion of the appellants' case, the trial court directed a verdict in favor of the agency, finding no substantial evidence to support the claim of negligence. We reverse and remand.

Stacy Keck, the appellant, sought employment through the American Employment Agency, agreed to pay a fee, and was referred to Gregory Devon Joiner for employment. Joiner, pretending to be an employer who was going to open a motorcycle repair shop, hired Mrs. Keck on Friday, July 13, 1979. She was to go to work Monday, but Joiner called and asked her to come to his office near 65th Street in Little Rock, on Saturday, July 14. There was nothing in the room except a telephone, ashtray, and a television set. She was hired to do routine office work, but was asked that day to sand a board to be used for a sign. Joiner cut a rope in pieces, telling her the rope would be used to spell out the name of the business. Instead he tied her up with the rope and forced her to

perform oral sex on him after he had tried to have intercourse with her. He took her to a nearby wooded area, ostensibly to wait for a friend, and then forced her to walk over twently miles along a railroad track to Benton, Arkansas. They arrived in Benton Sunday morning, having walked most of the night. He held her in a motel room and raped her again, twice. He released her Thursday. Joiner was convicted of rape and sentenced to imprisonment.

Stacy and her husband, Mike Keck, sued the employment agency for damages, alleging that the agency was negligent in three ways: Failure to investigate the background of Joiner, failing to ascertain whether Joiner was involved in a legitimate business activity, and failure to warn Mrs. Keck that no background check had been completed on Joiner before offering him as an employer. The trial court found no substantial evidence of negligence.

We review the trial court's direction of a verdict for the agency by examining the evidence in a light most favorable to the losing party. *Lindsey* v. *Watts*, 273 Ark. 478, 621 S.W.2d 679 (1981); *Miller* v. *Tipton*, 272 Ark. 1, 611 S.W.2d 764 (1981). The evidence must be given all reasonable inferences and conclusions that would work in favor of the losing parties, the Kecks in this case. *Dan Cowling and Associates, Inc.* v. *Board of Education of Clinton School District #1*, 273 Ark. 214, 618 S.W.2d 158 (1981). Generally if there is any conflict in the evidence, or we find the evidence is not in dispute, but is in such a state that fair minded people might have different conclusions, then a jury question is presented, and a directed verdict will be overturned. *Moore Ford Co.* v. *Smith*, 270 Ark. 340, 604 S.W.2d 943 (1980).

The questions presented are fundamental ones in the law of negligence: What duty, if any, did the employment agency owe to Stacy Keck; was that duty breached; could the agency have reasonably foreseen such a breach would cause the injury that Mrs. Keck suffered; and, did the negligent act cause or was it a substantial factor in the cause of the injury? There is the additional question of whether the actions of Joiner were an intervening cause; i.e., was the agency bound

to protect Mrs. Keck against such actions, and could it have foreseen the violence inflicted?

The question of what duty is owed is always a question of law and never one for the jury. W. PROSSER, LAW OF TORTS, § 45; *Keller* v. *White,* 173 Ark. 885, 293 S.W. 1017 (1927): *Missouri Pacific Railroad Co.* v. *Harelson,* 238 Ark. 452, 382 S.W.2d 900 (1964). The questions of foreseeability and causation may be ones of fact, depending on the case. W. PROSSER, *supra; See Larson Machine, Inc.* v. *Wallace,* 268 Ark. 192, 600 S.W.2d 1 (1980); *See Brinkley Car Works & Manufacturing Co.* v. *Cooper,* 60 Ark. 545, 31 S.W. 154 (1895). Usually, however, proximate causation is a question for the jury. *Larson Machine, Inc.* v. *Wallace, supra.* The trial court ruled that there was no substantial evidence of negligence and that ruling requires us to answer all the questions we have posed. There is no doubt that the agency owed Mrs. Keck some duty; indeed, it is conceded that the agency was under a duty to exercise ordinary care in its relationship with Mrs. Keck. But the appellee was able to convince the trial court, and argues on appeal, that its duty was satisfied when it took an application blank from Joiner, and when he, in fact, said he was an employer. We disagree with that assessment for several reasons, but mainly on the facts in this particular case.

First, there is an Arkansas statute that requires that employment agencies must have a "bona fide job order" before they refer any person for a job interview. Ark. Stat. Ann. § 81-1023. While this statute may have been enacted to protect the public from fraudulent practices, it states at least the duty every employment agency has regarding its customers. And the facts in this case certainly raise a question of whether the agency used ordinary care in accepting this application by Joiner as "bona fide," and whether the agency should have delved further into his background, or warned Mrs. Keck it was not verifying Joiner in any way because Mrs. Keck had a right to be naive in some respects and accept at face value an "employer" recommended to her.

Joiner merely called the agency and an order was filled out. The job counselor, Mrs. Jones, who was acquainted

with Mrs. Keck, called her on Friday and asked her to come right in. Mrs. Keck asked if she could come in Monday, and was told "No, he's got to have somebody today," and "He's willing to pay half the fee." The fee was $300.00 in this case. Mrs. Keck said the counselor was enthusiastic about the job possibility, thinking that Mrs. Keck would like the job. Joiner was called and asked to come in that same time, and when he showed up his appearance, according to Mrs. Jones, was "bad." Mrs. Keck said Mrs. Crowell, another counselor, told her that she was shocked at the way Joiner was dressed. He had on blue jeans and a T-shirt with the word "bullshirt" on it, had long hair and a beard, and was evidently unkempt. Mrs. Jones testified that he looked "bad" and that she and Mrs. Crowell told Mrs. Keck, "Hey, don't rush into this. Go home and think it over." Mrs. Jones said, "We [she and Mrs. Crowell] encouraged her, wait, go over there Monday, think it over the weekend." This is entirely inconsistent with Mrs. Keck's statement that she was encouraged to take the job and received no warning or advice whatsoever for caution.

The employment agency made no check at all on Joiner, and insists it owed no duty to do so. No references of any kind were asked for. If it had it would have learned Joiner did not have an office or repair shop when he called; he later rented an office Friday, one hour after he had talked to Mrs. Keck, in a one-story building containing a row of several offices, which was just a room, certainly not suitable for a motorcycle repair shop. A check could have shown that Joiner was living in what was described by an investigating officer as a "flop house;" a dirty run down house where Joiner lived with four others. In summary, the agency did nothing except produce Joiner and accepted at face value his claim of being an "employer." It insists that was the extent of its duty.

If the agency could not have foreseen any risk in referring Mrs. Keck to Joiner, it was not negligent because negligence cannot be predicated on a failure to anticipate the unforeseen. As Prosser puts the question:

[It] is one of negligence and the extent of obligation:

whether the defendant's responsibility extends to such interventions, which are foreign to the risk he has created. It is best stated as a problem of duty to protect the plaintiff [Mrs. Keck] against such an intervening cause. A decision that the defendant's [agency] conduct is not the 'proximate cause' of the result means only that he has not been negligent at all, or that his negligence, if any, does not cover such a risk. The element of shifting responsibility frequently enters. PROSSER, *supra* § 44.

Under the circumstances we cannot say as a matter of law the agency fulfilled its duty. An agency exercising ordinary care would have been put on notice something was suspicious about Joiner and his search for an immediate female employee. Indeed, Mrs. Jones' testimony supports this, when she says she cautioned Mrs. Keck to think it over and not go over until Monday. And twice she said that she was concerned about Mrs. Keck because of Joiner's appearance. Mrs. Jones testified that she had Joiner wait in Mrs. Crowell's office, rather than the reception area, because of his appearance. In fact she admitted that she had hidden Joiner in Mrs. Crowell's office.

One is ordinarily not liable for the acts of another unless a special relationship exists between the two such as master/servant or parent/child. *H. L. Wilson Lumber Co. v. Koen,* 202 Ark. 576, 151 S.W.2d 681 (1941); *Watts v. Safeway Cab & Storage Co.,* 193 Ark. 413, 100 S.W.2d 965 (1937); *See St. Louis & San Francisco Railroad Co. v. McFall,* 75 Ark. 30, 86 S.W. 824 (1905).

We believe that a cause of action for negligence against the employment agency was properly stated and was based on the agency's duty of care which arose out of its contractual relationship with Stacy Keck, its ability to foresee some danger to her, and because it had some degree of control over the employers it made available. This control could have been exercised by making further checks on Joiner. *See Duarte v. State,* 84 Cal. App. 3d 729, 148 Cal. Rptr. 804 (1978). The employment agency created its relationship with Mrs. Keck by offering its services and

thereby put itself in the position of owing a duty to her; and that duty in this case went beyond merely producing a man who claimed to be an employer.

The Restatement of Torts recognizes by two rules that simply because a third person commits a crime, that does not always exonerate one who created the situation which allowed the crime to occur. RESTATEMENT (SECOND) OF TORTS § 448 reads:

> Intentionally Tortious or Criminal Acts Done Under Opportunity Afforded by Actor's Negligence.
>
> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.* (Emphasis added.)

RESTATEMENT (SECOND) OF TORTS § 449 reads:

> Tortious or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent.
>
> If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

Specifically, where a victim of a rape can show that a defendant who owed some duty to the victim, breached that duty, and could foresee that the breach might result in injury to the victim, and that breach was a significant factor in a rape, then a jury question of negligence exists. In other words, such cases should not be automatically dismissed. In

*O'Hara* v. *Western Seven Trees Corp. Intercoast,* 75 Cal. App. 3d 798, 142 Cal. Rptr. 487 (1977), a woman was raped in her apartment and she sued the landlord and rental agent for failing to take reasonable steps to protect her. The trial court sustained the defendant's demurrer and dismissed the action. On appeal, the case was reversed holding that the plaintiff had a cause of action. *See* also *Holley* v. *Mt. Zion Terrace Apts.,* 382 So.2d 98 (Fla. App. 1980).

In *Butler* v. *Acme Markets, Inc.,* 177 N.J. Super. 279, 426 A.2d 521 (1981), *aff'd* 89 N.J. 270, 445 A.2d 1141 (1982), a woman who was assaulted in a supermarket parking lot, sued the store, and received a jury verdict, but the trial judge granted the defendant's motion for a judgment notwithstanding the verdict. On appeal, the judge's action was reversed, the court finding that liability for criminal attacks may be imposed where the harm is foreseeable and a reasonable person would have taken precautions against it.

In *Duarte* v. *State, supra,* a student was raped in a university residence hall and sued the university. The university's demurrer was sustained. On appeal the court reversed, holding that a cause of action was stated based on the duty of the university to anticipate the danger.

Of course, the Restatement of Torts and the cases cited do not demand a finding that the agency's action in this case was negligence which was a significant cause of the rape. But what those authorities do indicate is that such situations can state a cause of action and may present a question for the jury.

A jury question is presented . . . "In any case where there might be reasonable difference of opinions as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with regard to it, or the normal character of an intervening cause. W. PROSSER, *supra,* p. 290. This description fits exactly the facts in this case.

We are convinced that reasonable minds could disagree about whether the agency in this case should have acted differently, and whether it might have foreseen some pos-

sible injury to Mrs. Keck from this unkempt person who said he was an employer. We cannot say, as a matter of law, that reasonable minds could not find that the agency personnel could have foreseen some harm would result to her. Certainly the agency owed Mrs. Keck some duty to either check on Joiner further, warn her that no check had been made, or reject him as an employer. This is borne out by testimony by employees of the agency. Mrs. Jones claims she told Mrs. Keck she had better check the location and everything out. This is clearly an attempt by the agency to shift the burden it owed to Mrs. Keck.

Nor can we say, as a matter of law, that the agency's possible negligence was not a substantial factor in causing Mrs. Keck's injuries. We live in a time of locked doors, and other precautions that must be taken against the threat of rape. Rape is an all too common occurrence.

Whether Mrs. Keck was negligent was, of course, a jury question as well. *St. Louis-Southwestern Railway Co.* v. *Pennington,* 261 Ark. 650, 553 S.W.2d 436 (1961).

The appellant offered a deposition of an employee of another employment agency that Joiner applied to and they refused to list him as an employer because he sounded "fishy."

It is unclear why the deposition of the other agency was excluded. The briefs state that it was because of relevancy but they fail to abstract the portions of the record where such a ruling was made. The record reflects that after an argument pertaining to whether the deposition was admissible due to Mrs. Beane's unavailability, the court ruled that it was admissible. Mrs. Keck had introduced evidence that she had subpoenaed Mrs. Beane before trial. Then the employment agency made a relevancy objection and the court said that he would have to read the deposition. The briefs indicate that no further mention is made of the deposition until prior to the trial judge's ruling that there was no substantial evidence of negligence, when the judge said, "Let's go ahead and proffer the deposition and have it marked for evidence."

We infer from that, as the briefs contend, that the trial court excluded the deposition because of relevance. Whether the deposition is admissible is dependent on Ark. Stat. Ann. § 28-1001, Rules 401 and 403 (Repl. 1979). We find that the testimony in the deposition is relevant evidence in that it is evidence of what another employment agency did in a like situation. Before admitting the deposition, however, the trial judge should caution the jury that it should consider the testimony only as evidence of what may be reasonable conduct and not as evidence of the legal standard of conduct. *See* 2 Wigmore, EVIDENCE § 261 (3d ed. 1940). Initially, of course, the court must determine the admissibility of the deposition under Ark. Stat. Ann. § 28-348 (d) (Repl. 19079).

Reversed and remanded.