Cheryl Lynn JACKSON, Plaintiff,

v.

WARNER HOLDINGS, LTD., A Canadian Corporation, and Ruth Singer, Defendants.

Civ. No. 85–2102.

United States District Court, W.D. Arkansas, Fort Smith Division.

Sept. 5, 1985.

Buddy Garner, Fort Smith, Ark., for plaintiff.

G. Alan Wooten, Warner & Smith, Fort Smith, Ark., for defendants.

MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

The court has reviewed the file in this case and is prepared to rule on defendants' 12(b)(6) motion. The facts as stated in the complaint allege that plaintiff, Cheryl Lynn Jackson, was a tenant in unit number 4400 of the Yorkshire Apartments owned by defendants herein when Charles Issac Wilson, Jr., entered her apartment without her consent and sexually assaulted and repeatedly raped her. Plaintiff asserts that she suffered damages as a result of the attack and that certain acts of negligence by the defendants were a proximate cause of her damages. The specific acts of negligence alleged by plaintiff are:

(a) In failing to provide reasonable and adequate security to prevent unauthorized persons from entering said apartments;

(b) In failing to provide adequate security devices such as dead bolt or tamperproof locks;

(c) In failing to provide adequate curtains or other devices to insure the privacy of the tenants of said apartments, and specifically, plaintiff herein;

(d) In failing to otherwise exercise ordinary care to insure the safety of plaintiff from criminal attacks;

(e) In failing to warn plaintiff that she should secure, for her own protection, adequate security devices;

(f) In failing to inspect and correct said apartments for adequate security devices.

Whether a landlord has a duty to provide adequate security in the form of door locks, lighting and security devices to protect tenants from criminal attacks by third persons has not been specifically decided by the courts in Arkansas. In diversity cases such as this, it is the duty of this court to apply the law of Arkansas and if no definitive rule regarding the issue at bar exists, it is the obligation of this court to rule as the Arkansas Supreme Court would rule if presented with the same question.

*See Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under the law of Arkansas, the question of what duty is owed is always a question of law and never one for the jury. W. Prosser, *Law of Torts* § 45; *Keller v. White*, 173 Ark. 885, 293 S.W. 1017 (1927); *Missouri Pacific Railroad Co. v. Harelson*, 238 Ark. 452, 382 S.W.2d 900 (1964). While there is no case directly on point with this issue, there are some Arkansas cases which address analogous issues and thereby provide the court with some guidance.

Three cases decided by the Arkansas Supreme Court between 1932 and 1983 reflect the progression of the law generally in regard to the extracontractual duties owed by landlords to their tenants.

In *Joseph v. Riffel*, 186 Ark. 418, 53 S.W.2d 987 (1932), the court held that "in the absence of statute or agreement, the landlord is under no legal obligation to light common passageways for the benefit of tenants." *See* 186 Ark. at 420, 53 S.W.2d 987. The court did not equivocate in so ruling, and merely stated that its holding was in conformity with the "general rule."

In *Kilbury v. McConnell*, 246 Ark. 528, 438 S.W.2d 692 (1969), the court followed *Joseph*, but not without some reluctance. In *Kilbury* the court held that in the absence of an express or implied agreement, a landlord is under no obligation or duty to remove such temporary hazards as a natural accumulation of ice and snow from a common stairway for the common use of his tenants. However, the court did not arrive at its decision without some reluctance. The court noted that "many courts have found favor with this rule which imposes upon the landlord the duty to exercise reasonable care with respect to keeping the premises free from accumulations of ice and snow." In conclusion, the court stated "having previously held that a landlord is not obligated to light that portion of the premises reserved for common use, we cannot say that a landlord owes a duty to remove such temporary hazards as a natu-

ral accumulation of ice and snow from a common stairway.... There is no evidence at bar of any agreement or assumption of duty that removes the appellant from the general rule to which we are committed." 246 Ark. at 532–33, 438 S.W.2d 692.

The law in this area has rapidly progressed in the past few years and that progression is reflected in *Keck v. American Employment Agency, Inc.*, 279 Ark. 294, 652 S.W.2d 2 (1983).

In *Keck* the plaintiff sought employment through American Employment Agency and was referred to Gregory Devon Joiner who was pretending to be an employer. When Keck went to work, Joiner abducted and raped her. Reversing a directed verdict in favor of the defendant, the Arkansas Supreme Court held that the employment agency is burdened with the duty of exercising ordinary care in its relationship with Keck. "The employment agency created its relationship with Mrs. Keck by offering its services and thereby put itself in the position of owing a duty to her; and that duty in this case went beyond merely producing a man who claimed to be an employer."

The court's progression away from the older line of conservative cases is especially evident in the analogies drawn by the court which are very closely on point with the case now at bar.

Specifically, where a victim of a rape can show that a defendant who owed some duty to the victim, breached that duty, and could foresee that the breach might result in injury to the victim, and that breach was a significant factor in a rape, then a jury question of negligence exists. In other words, such cases should not be automatically dismissed. In *O'Hara v. Western Seven Trees Corp. Intercoast*, 75 Cal.App.3d 798, 142 Cal. Rptr. 487 (1977), a woman was raped in her apartment and she sued the landlord and rental agent for failing to take reasonable steps to protect her. The trial court sustained the defendant's demurrer and dismissed the action. On appeal, the case was reversed holding that the plaintiff had a cause of action. *See also Holley v. Mt. Zion Terrace Apts.*, 382 So.2d 98 (Fla.App.1980).

In *Butler v. Acme Markets, Inc.*, 177 N.J.Super. 279, 426 A.2d 521 (1981), *aff'd*, 89 N.J. 270, 445 A.2d 1141 (1982), a woman who was assaulted in a supermarket parking lot, sued the store, and received a jury verdict, but the trial judge granted the defendant's motion for a judgment notwithstanding the verdict. On appeal, the judge's action was reversed, the court finding that liability for criminal attacks may be imposed where the harm is foreseeable and a reasonable person would have taken precautions against it.

In *Duarte v. State* [84 Cal.App.3d 729, 148 Cal.Rptr. 804 (1978)], *supra*, a student was raped in a university residence hall and sued the university. The university's demurrer was sustained. On appeal the court reversed, holding that a cause of action was stated based on the duty of the university to anticipate the danger.

Of course, the Restatement of Torts and the cases cited do not demand a finding that the agency's action in this case was negligence which was a significant cause of the rape. But what those authorities do indicate is that such situations can state a cause of action and may present a question for the jury.

A jury question is presented ... "In any case where there might be reasonable difference of opinions as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with regard to it, or the normal character of an intervening cause." W. PROSSER, *supra*, p. 290. This description fits exactly the facts in this case.

■ The progression of the law in Arkansas, as evidenced by the cases discussed above and in other jurisdictions, combined with the analogy to *O'Hara* mentioned in *Keck*, and the liberal rules regarding motions to dismiss, persuasively indicate that the Arkansas Supreme Court, if presented

with the issue at bar would recognize a duty owed by a landlord to his or her tenants to employ reasonable security measures to avoid foreseeable criminal attacks by third persons.

A Rule 12(b)(6) motion is to be read as a whole, *Continental Ore Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962), and it is to be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Bennett v. Berg*, 710 F.2d 1361, 1363 (8th Cir.1983). Furthermore, complaints are to be "liberally construed in favor of the plaintiff." *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969), and *United States v. Advance Machine Company*, 547 F.Supp. 1085, 1088 (D.Minn. 1982). It has also been said that all facts pleaded in the complaint are taken to be true, for 12(b)(6) purposes. *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976), and all reasonable inferences from facts pleaded in the complaint are to be drawn and deemed to be true. *See* 5 Wright & Miller, *Federal Practice and Procedure* § 1363 at 667 (1969).

Based on the facts alleged in the complaint, the court cannot say that "it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." Therefore, the motion to dismiss will be denied.

A separate order in accord with this memorandum opinion will be entered contemporaneously herewith.