Zobel, J.
Invoking common-law negligence and G.L.c. 93A, plaintiff alleges sexual assault and harassment by an employer to whom defendant’s placement office referred her. Defendant has moved for summary judgment arguing absence of any duty to investigate a student’s prospective employer and an inability to foresee the employer’s injurious acts.
During the 1989-1990 academic year, plaintiff enrolled at and paid tuition to defendant, a state-licensed post-secondary vocational school, whose placement office provides students and graduates with “placement support services,” including referrals to employers with openings in the students’ fields of study.
Defendant mentions the placement services in its promotional literature, its application for admission (which plaintiff signed, and which said: “I understand that ATI assumes no responsibilily for and does not guarantee employment at any time or in any field”), its course catalogue, and its enrollment agreement. Plaintiff also received verbal notification that, as part of its program of study, defendant would attempt to place her in a job in her field.
The placement office receives “job orders” from private companies and matches them with defendant students or graduates who meet the qualifications specified. Defendant does not train its placement staff nor establish policies as to dealing with any job order that might include unlawful or discriminatory specifications.
Once the placement office effects a “match,” it either makes a copy of the job order available to the student, or, with the student’s permission, forwards the student’s résumé directly to the prospective employer.
*612 Plaintiff completed her studies in June 1990 and consulted the placement office about employment related to her field of study.
On July 27, 1990, Susan Mills (“Mills”), defendant’s then-placement director, took a telephoned job order from Allan Harrington (“Harrington”) of Winchester International Group, Inc. (“Winchester”): “Female tech for Communications switching complex — a lot of travel — part-time.” Harrington told Mills he preferred a female technician “because he found they have better skills in dealing with the public” (Mills Dep. 24). According to Mills, it “wasn’t really unusual" for an employer to specify a preference for a female candidate, adding, “(W]e try to do what we can for affirmative action”; she was unaware of any regulations or laws regarding employers’ specifying the sex of job candidates (Mills Dep. at 25). In response to Harrington’s request, but without further inquiiy, Mills faxed Harrington the resumes of four female students, including plaintiff.
In fact, as minimal investigation would have disclosed, Winchester consisted of only Harrington and his wife; it had no business offices, operating instead out of Harrington’s home (Plaintiff Affid. ¶9); and, most important, in 1982, Harrington had been convicted of indecent assault and battery. Defendant’s vice president Timothy Sullivan said he knew of “no prior incidents of alleged harassment” involving Winchester or Harrington (Sullivan Affid. at 3). Mills did not inform plaintiff before releasing her records to Harrington.
Harrington subsequently contacted plaintiff, telling her he had obtained her name and telephone number from defendant. “Assuming that defendant’s placement office would only refer [her] name to legitimate employers which it had screened” (Silvers Affid. ¶8), plaintiff accepted Harrington’s offer of employment on or about July 31, 1990.
Plaintiff worked for Harrington from about August 10, 1990 through September 27, 1990. She alleges that, during the term of her employment, Harrington sexually assaulted and harassed her, insisting that she share a room with him on business trips, walking naked in her presence, touching her against her will, and forcing her to have sexual intercourse (Silvers Affid. ¶¶8, 12). In September 1990, Harrington fired plaintiff for refusing to submit to his sexual demands (Silvers Affid. ¶14).
Thereafter, plaintiff reported Harrington’s conduct to defendant, but defendant took no action. Mills’s response to her complaint was, ‘Too bad he [Harrington] wasn’t younger and better looking” (Silvers Affid. ¶15). Asked whether she had made this remark, Mills replied, “I might have” (Mills Dep. at 48).
Plaintiff alleges that she has suffered considerable emotional distress, loss of self-esteem, and persistent loss of sleep as a result of Harrington’s acts.
DISCUSSION
A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
1. On the issue of negligence, plaintiff argues that, in exchange for plaintiffs payment of tuition, defendant was required to exercise reasonable care in performing its contractual obligation to assist plaintiffs employment efforts. Plaintiff also says that defendant, having voluntarily undertaken to provide placement services, had a duty to perform that undertaking with due care. Plaintiff urges that social policy and the special relationship between a college’s placement office and its students require the placement office to exercise reasonable care when performing placement services. In response, defendant argues (a) that it had no legal duty to investigate the background of every employee of every employer using its placement listings or to scrutinize job orders for potential violations of employment law and (b) that it could not foresee criminal assaults by the employees of prospective employers.
Defendant argues that imposing a duty to investigate the sexual conduct of a prospective employer’s employees upon receiving a request for female applicants would place the school at risk of being sued for invasion of privacy, would deter employers from using the school’s placement listings, and would contravene the Commonwealth’s policy of encouraging gender-neutral hiring.
2. As to G.L.c. 93A, plaintiff argues that defendant’s conduct deceived: (1) It could reasonably be found to have caused her to act differently; and (2) it failed to comply with a statute or regulation enacted to protect public health, safety or welfare. Defendant responds that the statute does not control conduct outside the “penumbra of some common law, statutory or other established concept of unfairness,” which is neither “immoral, unethical, oppressive or unscrupulous, and which does not attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.”
Whether one undertakes an obligation contractually, see, Larabee v. Potvin Lumber Co., 390 Mass. 636, 640 (1983), or voluntarily, see Mullins v. Pine Manor College, 389 Mass. 47, 52-53 (1983), the actor must perform with due care; see also, Pierre v. United States, 741 F.Supp. 306, 309 (D.Mass. 1990). Here, having received tuition payments, defendant agreed to furnish its students a training program and job placement service. Defendant thus commit *613 ted itself to exercise due care in delivering those services.
Generally, absent a special relationship, one need not protect another from a third person’s wrongdoing. The prime litmus, Schmid v. National Bank of Greece, 622 F.Supp. 704, 712 (D.Mass. 1985), aff'd without opn., 802 F.2d 439 (1st Cir. 1986), is simply: Should defendant have foreseen a reasonable need for proactive intervention and — most important — a substantial risk of harm to plaintiff from failure to act? See, Jesionek v. Massachusetts Port Authority, 376 Mass. 101, 105 (1978); see also, Nolan & Sartorio, Tort Law, §228, at 383. “As the harm that safely may be considered foreseeable to the defendant changes with the evolving expectations of a maturing society, so change the ‘special relationships’ upon which the common Law will base tort liability for the failure to take affirmative action with reasonable care.” Irwin v. Ware, 392 Mass. 745, 756-57 (1984).
Here, defendant’s students, including plaintiff, could reasonably expect that the school’s placement office would make some effort to avoid placing them with an employer likely to harm them. A student signing the application for admission, even though it included the statement, “I understand that ATI assumes no responsibility for and does not guarantee employment at any time or in any field,” did not thereby abandon this expectation.
When Harrington placed a job order over the telephone specifically requesting a female candidate without offering any legitimate reason for his request, defendant made no effort to determine whether Harrington was engaging in employment discrimination on the basis of sex, as prohibited by G.L.c. 151B, §4. Rather, ignoring the possible consequences, defendant immediately faxed plaintiffs résumé to Harrington, without obtaining a release from her.
These facts alone put at issue whether the placement office used even ordinary care whether defendant could foresee that harm to plaintiff might result. See Keck v. American Employment Agency Inc., 652 S.W.2d 2, 5-6 (Ark. 1983).
In the framework of “existing social values and customs, and . . . appropriate social policy,” Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624, 629 (1989), defendant was required at least to inquire into the bonafides of Harrington’s female-only job order. The Legislature has expressed a strong preference for protecting individuals from sexual harassment in employment. G.L.c. 151B, §4. A similar policy pervades those regulations of the Massachusetts Commission Against Discrimination interpreting the statute.
Imposing a duty on defendant to exercise reasonable care not to place students with employers who practice sexual discrimination would serve to bolster these policies. Inquiry into the reasons that an employer has specifically requested a female candidate would not contravene the public policy of promoting affirmative action for women. Determining in a particular case whether gender is a bona fide occupational qualification does not contravene affirmative action for women. The inquiry need not be, as defendant fears, “intrusive” or “Orwellian.” Nor must it extend to the personal life of every employee of every prospective employer.
Certainly, the obligation to inquire requires more than what defendant did here. Simply sending a student’s résumé to an individual who has phoned in a request for a female employee without determining whether gender was a bona fide occupational qualification, without informing the student beforehand, does not properly discharge the duty.
Defendant cannot — at least at this stage — avoid liability under G.L.c. 93A. If, as I have concluded, defendant was obliged to determine whether gender was a bona fide occupational qualification of the position Harrington was seeking to fill, defendant’s failure to make the necessary inquiry constitutes conduct well within the broad “penumbra” of the wide “concept of unfairness” defined by G.L.c. 151B and other prohibitions against gender-based discrimination. See, Piccuirro v. Gaitenby, 20 Mass.App.Ct. 286, 290-91 (1985). Moreover, defendant’s assertion that, to violate G.L.c. 93A, its conduct had to “attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce” misconstrues Levings v. Forbes & Wallace, Inc., 8 Mass. App. 498, 504. Plaintiff, a consumer, is not held to the more rigid standard applicable to businesses.
Because defendant’s conduct could reasonably be found to have caused plaintiff to act differently than she otherwise would have, see Hogan v. Riemer, 35 Mass.App.Ct. 360, 365 (1993); Lowell Gas Co. v. Attorney General, 377 Mass. 37, 51 (1979), it could constitute a statutorily proscribed deceptive practice.
Reasonable minds may indeed disagree as to whether the placement office should have acted differently and whether it might have foreseen some possible injury to plaintiff from Harrington. However, one cannot say that as a matter of law reasonable minds could not find that the placement office acted unreasonably. Nor could one say that defendant’s conduct played no substantial part in plaintiffs injuries. Thus summary judgment is inappropriate.
ORDER
Accordingly, it is Ordered, that defendant’s Motion for Summary Judgment be, and the same hereby is; Denied.