James F. PROPST *v.* Dan McNEILL, in His Official Capacity as
Airport Commission Chairman, Walnut Ridge Airport, and City
of Walnut Ridge, d/b/a Bertco, Inc.

95-1290                                    932 S.W.2d 766

Supreme Court of Arkansas
Opinion delivered November 18, 1996

*Banks, Dodson, & Spades,* by: *Mark S. Carter,* for appellant.

*Robert H. Crank* and *Barrett & Deacon,* by: *Paul D. Waddell, D.P. Marshall, Jr.,* and *Kevin W. Cole,* for appellees.

TOM GLAZE, Justice. This case involves an issue concerning landlord-tenant liability. Appellant James F. Propst entered into a lease with appellee Walnut Ridge Airport Commission[1] and that lease set out the terms under which Propst stored his plane, a 1972 Cessna 182, in hangar space at the Walnut Ridge Airport. Afterwards, a wind storm damaged the hangar and Propst's plane. Propst subsequently brought suit against the Commission, alleging the Commission had negligently failed to (1) secure the hangar to its foundation, (2) replace defective structural supports, or (3) warn him of the hangar's defective condition. The Commission answered, denying the allegations and raising a number of affirmative defenses. Eventually, the Commission moved for summary judgment, claiming any obligation it might have as a landlord was a matter of contract and the parties' lease controlled the litigation. The Commission, without admitting its hangar building was in disrepair, argued that, under Arkansas's landlord-tenant law, it was not responsible for damages to Propst's plane because of the Commission's failure to repair the leased building. The trial court agreed and granted the Commission's motion. Propst appeals from that summary judgment.

In his first argument, Propst acknowledges that Arkansas has recognized the caveat lessee doctrine for almost a century, *Haizlip* v. *Rozenberg,* 63 Ark. 430, 39 S.W. 60 (1897), and under that rule, unless a landlord agrees with his tenant to repair leased premises, he cannot, in the absence of statute, be compelled to do so or be held liable for repairs. *Stalter* v. *Akers,* 303 Ark. 603, 798

---

[1] There are other appellees, but for clarity and convenience, we refer only to the Commission.

S.W.2d 428 (1990); *see also Majewski v. Cantrell*, 293 Ark. 360, 737 S.W.2d 649 (1987); *Terry v. Cities of Helena & W. Helena*, 256 Ark. 226, 506 S.W.2d 573 (1974); *Hurst v. Field*, 281 Ark. 106, 661 S.W.2d 393 (1983). Consistent with this doctrine, the trial court here determined that, under the parties' lease, the Commission never agreed to repair or maintain its hangar, so the Commission was not obligated to pay for any plane damage Propst may have sustained, resulting from defects found in the hangar building. However, Propst, citing *Sargent v. Ross*, 113 N.H. 388, 308 A.2d 528 (1973), opines the caveat lessee rule of law is outdated and asserts landlords should be compelled to exercise reasonable care not to subject others to an unreasonable risk of harm. *See also Stephens v. Stearns*, 678 P.2d 41 (Idaho 1984) (adopted rule that a landlord is under a duty to exercise reasonable care in light of all circumstances); *Asper v. Heffley*, 458 A.2d 1364 (Pa. Super. 1983) (negligence of the landlord is a matter for determination by the factfinder); *Faureau v. Miller*, 591 A.2d 68 (Vt. 1991) (landlords may be held liable for exposing their tenants to unreasonable risks of harm in the leased premises). To further support his contention that Arkansas's adherence to the caveat lessee rule should end, Propst submits that Arkansas has become less rural, and consequently tenants have become less informed and too ill-equipped to judge the structural integrity of buildings with which they are unfamiliar. *See* Thomas M. Quinn and Earl Phillips, *The Law of Landlord-Tenant: A Critical Evaluation of the Past with Guidelines for the Future*, 38 Ford. L. Rev. 225 (1969). He adds that landlords, on the other hand, are generally familiar with their properties either through firsthand knowledge of the condition of the properties or through knowledge imputed to them by persons hired to manage their properties.

The Commission acknowledges that a majority of states no longer apply caveat lessee; nonetheless, it submits Arkansas courts should continue to follow that doctrine, or at the very least, leave it up to the General Assembly to decide whether the state's landlord-tenant law should be changed in this respect. First, the Commission cites the case of *Dapkunar v. Cagle*, 356 N.E.2d 575 (Ill. 1976), where the appellate court rejected a party-tenant's invitation to depart from the well-established caveat doctrine as applied to leases. The Illinois Court reasoned in part as follows:

> In the landlord-tenant law, on the other hand, the landlord, although having the benefit of a limited immunity

through the rule of *caveat emptor,* is not *totally* insulated from recovery for injuries sustained by the tenant or third persons as a result of defects in the premises. As we have already pointed out, there are several exceptions which can allow for recovery from the landlord; and these exceptions cover many injuries. Additionally, building codes in force in many localities today have the effect of protecting tenants, to a certain extent, by requiring landlords to keep their buildings within applicable standards. At the time of the early product liability law developments away from privity notions, purchasers of manufactured products did not have the benefit of anything comparable to a building code to control manufacturers. It can hardly be said, therefore, that a present-day tenant injured by a defect in the leased premises is in the same remediless position with respect to the landlord as the injured purchaser once was with respect to the product manufacturer.

Expanding further on why this court should refuse to overturn its earlier case law on the subject, the Commission argues the caveat lessee rule serves Arkansas's constitutionally declared public policy of respecting its citizens' right to contract. It suggests that eliminating caveat lessee will not result in more protections, but instead in fewer options for the tenant. In other words, the Commission argues the law should not be changed to eliminate the productive and beneficial use of marginal structures, absent landlord repair and insurance against possible liability.

In arguing that it should be the legislature's province to change this state's landlord-tenant law, the Commission points out it generally has been that governing body in other states that has abandoned the doctrine by adopting the Uniform Residential Landlord and Tenant Act. *See Watson v. Sellers,* 385 S.E.2d 369 (S.C. App. 1989). Because of the policy considerations and possible impact that would ensue in enlarging a landlord's liability, there is merit in the argument that such matters might be dealt with better in the legislative arena. In any event, this court has steadfastly adhered to the caveat lessee rule for one hundred years without a hint it might consider abandoning it. This court has held that it is a matter of public policy to uphold prior decisions unless great injury or injustice would result. *Independence Federal Bank v. Paine Webber,* 302 Ark. 324, 789 S.W.2d 725 (1990). As the Commission properly

mentions, the present case is one involving a businessman who owns a plane and was not shown to be someone who could not appreciate the risk of storing his plane in an old hangar. Although this court does not foreclose its possible review of the caveat lessee rule and the efficacy in abandoning that rule in the future, we conclude that this is not the type of situation or facts that warrant our departure from the well-established law of this state. That being so, we reject the invitation to do so in this case.

Propst also argues on appeal that, even if this court declines to overturn the caveat lessee doctrine, that doctrine still provides that landlords are liable in tort for injuries and damages resulting from defective and dangerous conditions if the injury is attributable to (1) a hidden danger in the premises of which the landlord, but not the tenant, was aware; (2) premises leased for public use; (3) premises retained under the landlord's control; or (4) premises negligently repaired by the landlord. *See* Restatement (Second) of Torts, §§ 358-362 (1965). In this respect, Propst first contends a material issue of fact was raised in this cause as to whether a hidden or latent defect existed concerning the leased hangar and to what extent the Commission knew about that defect and possible danger. The Commission counters by simply stating that Arkansas has never recognized the latent-defect exception to caveat lessee and that, even if Arkansas had, Propst's proof was insufficient to prove defect existed.

Propst bases his latent-defect argument on his affidavit wherein he averred that, after the windstorm tore away the hangar in question, he observed the two other hangars on the premises and repairs had previously been undertaken to reattach one of the buildings to its foundation. This fact, Propst argues, indicated the Commission was aware Propst's leased hangar had also been inadequately attached to its foundation. Without the need of discussing whether the latent-defect exception has ever been recognized by Arkansas courts, we believe that, even if it had, Propst's evidence on this issue is sorely lacking. He offered no proof that his leased hangar was defective or caused his damages, and the undisputed proof showed many other structures had been damaged by the windstorm — this included a third hangar which, too, was located on the premises.

In his final argument, Propst suggests a jury question exists as to whether the Commission had retained sufficient control of the leased building so as to impose a duty to keep the premises in a

reasonably safe condition. He points out that, under the parties' lease, the airport manager had a key and right to enter the hangar and to make any required improvements. Propst also states that the lease prohibited him from making his own repairs.

We first note that Propst fails to cite any Arkansas law where the retention-of-control exception has been recognized. In fact, this court has repeatedly stated that only an express agreement or assumption of duty by conduct can remove a landlord from the general rule of nonliability. *Hall* v. *Rental Management, Inc.*, 323 Ark. 43, 913 S.W.2d 293 (1996); *Bartley* v. *Sweetser*, 319 Ark. 117, 890 S.W.2d 250 (1994); *Barnes, Quinn, Flake & Anderson* v. *Rankins*, 312 Ark. 240, 848 S.W.2d 924 (1993); *Glasgow* v. *Century Property Fund XIX*, 299 Ark. 221, 772 S.W.2d 312 (1989); *Hurst* v. *Feild*, 281 Ark. 106, 661 S.W.2d 393 (1983); *Kilbury* v. *McConnell*, 246 Ark. 528, 438 S.W.2d 692 (1969); *Joseph* v. *Riffee*, 186 Ark. 418, 53 S.W.2d 987 (1932). Thus, we conclude by holding that the Commission here was not shown to have agreed or to have undertaken any duty to repair or maintain the leased hangar in question. As a consequence, we agree with the trial court that no issue of material fact existed to be tried on this issue.

We affirm.