Kathy R. EOFF *v.* Lisa WARDEN

97-221                                    953 S.W.2d 880

Supreme Court of Arkansas
Opinion delivered October 16, 1997
[Petition for rehearing denied November 13, 1997.]

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *John E. Moore* and *Julia L. Busfield*, for appellant.

*Hodges & Hodges*, by: *David Hodges* and *Lona McCastlain*, for appellee.

TOM GLAZE, Justice. Lisa Warden brought this lawsuit against Kathy R. Eoff after sustaining injuries from falling in the parking lot on property of an apartment complex owned by Kathy. Prior to her fall, Lisa had been at her friend's, Cecilia Mitchell's, apartment in the complex to help Cecilia with her clothes dryer, but when the two of them could not fix it, Lisa's husband was called and he performed the repairs. Afterwards, Cecilia was confronted with the dilemma of needing to pick up her son from football practice and staying at her apartment to receive a telephone call. In order to help Cecilia, Lisa volunteered that she and her husband would pick up Cecilia's son so Cecilia could stay and not miss her call. The Wardens opted to drive Cecilia's car so Cecilia's son would easily recognize it. It was night when the Wardens walked to Cecilia's car, and the car was parked in one of two spaces which she had been designated as a tenant. Twelve foot long concrete barriers had been placed to separate parking spaces, and Lisa tripped over one of the barriers on the driver's side of Cecilia's car. She sustained a broken arm, and later required surgery.

In Lisa's complaint against Kathy Eoff, Lisa alleged she was a business invitee at the time she fell on Kathy's parking lot. She further asserted Kathy's failures to maintain the premises, to adequately light the parking lot and to place concrete barriers properly were the proximate causes of Lisa's injuries. At trial, the jury agreed, 10 to 2, rendering a verdict in Lisa's favor in the sum of $30,000.00.

On appeal, Kathy Eoff argues one point for reversal. She relies on *Stalter v. Akers*, 303 Ark. 603, 798 S.W.2d 428 (1990), in support of her contention that the trial court erred in failing to direct a verdict in Kathy's favor because Lisa had failed to establish

that Kathy had any legal duty to make repairs or remove defects on leased property. We must agree, and therefore reverse and dismiss.

█ In *Akers*, Patsi Stalter leased or rented a house to Jason and Laura Howard. Sandy Akers was the Howards' neighbor and frequent visitor. On the day in question, the Howards invited Akers to their house, and at the end of their visit, Akers went down the steps from the Howards' porch and fell when she reached the bottom step. The bottom step had been broken and a concrete block had been placed in its stead as a temporary substitute. Akers sued the Howards and Stalter for injuries resulting from her fall. She obtained a default judgment against the Howards, the tenants, and a jury verdict of $16,000.00 against Stalter, the landlord. The *Akers* court reversed the jury verdict, and in so holding stated as follows:

> We believe the injured third party (Akers) must establish a landlord's contractual duty to repair a defect in the premises before he (or she) may recover for an injury suffered upon leased property over which the landlord has relinquished possession and control to a tenant.

*Stalter*, 303 Ark. at 607.

In the present case, the trial judge was persuaded that *Akers* was distinguishable, because there, the landlord (Stalter) had relinquished control over the leased house, but here, the landlord, Kathy Eoff, had retained possession and control of the parking lot of her apartment complex. In reaching this decision, the trial judge mentioned no evidence that showed such a distinction existed, nor did the judge cite any legal authority in support of his decision.

██ In fact, the case law bearing on the landlord–liability issue before the trial judge runs counter to his ruling. For example, this court has long adhered to the general rule that a landlord is under no legal obligation to a tenant for injuries sustained in common areas, absent a statute or an agreement. *See Kilbury v. McConnell*, 246 Ark. 528, 438 S.W.2d 692 (1969); *see also Glasgow v. Century Property Fund XIX*, 299 Ark. 221, 772 S.W.2d 312 (1989); *Joseph v. Riffel*, 186 Ark. 418, 53 S.W.2d 987 (1932); *Haizlip v. Rosenberg*, 63 Ark. 430, 39 S.W. 60 (1897). Moreover,

in *Propst v. McNeill*, 326 Ark. 623, 932 S.W.2d 766 (1996), the court stated that no Arkansas law had been shown where a landlord's retention-of-control exception had ever been recognized, thus, the *Propst* court held that only an express agreement or assumption of duty by conduct can remove a landlord from the general rule of nonliability. Here, because Lisa Warden failed to show that Kathy Eoff had in any way agreed or undertook a duty to maintain or repair her premises, the trial judge erred in denying Eoff's motion for directed verdict.

■ In conclusion, we address Lisa's argument that Kathy failed to properly renew her motion for directed verdict at the end of all the evidence, but instead waited until after the instructions had been argued. Lisa's argument is in error. Suffice it to say, Kathy's counsel moved for directed verdict after Lisa's case-in-chief, and in doing so, counsel specifically cited the applicable case law bearing on landlord liability and pointed out that Lisa had failed to show Kathy had agreed or undertook any duty to maintain or repair the parking lot. At the end of all the evidence, defense counsel renewed his earlier motions, thus generally renewing the directed-verdict motion Kathy made at the end of Lisa's case-in-chief.[1] This court has held that a defendant is not required to restate his or her grounds for directed verdict where he had already made a specific motion at the close of the plaintiff's case. *See Aronson v. Harriman*, 321 Ark. 359, 901 S.W.2d 832 (1995).

For the reasons above, we reverse and dismiss.

NEWBERN and CORBIN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. The issue in this appeal is whether the landlord is immunized against an action by a person, other than the landlord's tenant, for negligence in creating or maintaining a "common" area which has not been placed in the exclusive control of the tenant. The majority opinion concludes that the landlord may not be liable to the guest of a tenant who alleges that the landlord was negligent in creating barriers in a

---

[1] Defense also unnecessarily renewed his directed-verdict motion during a discussion in chambers regarding which jury instructions should be proffered.

parking lot and then negligently failing to light the parking lot properly. The majority's holding is based on a case holding that a landlord may not be held liable to her tenant for an injury occurring to a third party on "leased property over which the landlord has relinquished possession and control to a tenant." *Stalter v. Akers,* 303 Ark. 603, 607, 798 S.W.2d 428, 430 (1990). The property in question in the *Stalter* case was a porch on a house the control of which had clearly been relinquished to the tenant.

As the majority opinion states, we have tenaciously clung to the rule that a landlord's duty to a tenant is solely contractual, and thus we have held that a landlord is not liable for negligence in failure properly to maintain rental property resulting in injury to the tenant. We have questioned that view, however.

In *Propst v. McNeill,* 326 Ark. 623, 932 S.W.2d 766 (1996), a case in which a tenant alleged property damage due to his landlord's failure to maintain an airplane hangar properly, we pointed out our longstanding rule and said, "Because of the policy considerations and possible impact that would ensue in enlarging a landlord's liability, there is merit in the argument that such matters might be dealt with better in the legislative arena." Later in the same paragraph, however, we wrote that we would "not foreclose" review of the "caveat lessee" rule in a proper case. *See also Bartley v. Sweetser,* 319 Ark. 117, 122, 890 S.W.2d 250, 252 (1994), (Newbern, J., concurring.) Here we are provided an opportunity to limit a rule with respect to which we have express doubts. Other courts have so limited the application of the rule.

> It is well-established that the landlord's traditional tort immunity is not available when injuries to tenants or to others result from dangerous conditions on portions of the property that are within the control of the landlord. In this situation, the position of the landlord is essentially that of a possessor of land who invites or permits others to use the property, and who thereby owes to such users a duty of reasonable contemplated use. The landlord is therefore under an affirmative obligation to exercise reasonable care to inspect portions of the land located there. The obligation extends not only to the tenant, but also to the tenant's family members, employees, invitees, and guests, and to others who are rightfully on the land.

5 Thompson on Real Property, Thomas Edition 205 (David A. Thomas ed. 1994). See *Lakeview Assocs., Ltd. V. Maes* (1995 Colo.) (landlord owed duty to tenant with respect to safety of parking lot whether or not tenant used lot to park an automobile; *see also Hankard v. Beal,* 543 A.2d 1376 (Me. 1988) (trial court improperly granted landlord's motion for summary judgment as to landlord's liability when a third party fell and was injured in parking lot). "Implicit in these decisions is the notion that since no individual tenant controls the common area, control remains with the landlord." Robert S. Schoshinski, American Law of Landlord and Tenant 190 (1980 and Supp. 1997).

If a landlord may not be held responsible for negligence in creating or maintaining an ill-lighted apartment-house parking lot which is alleged to be a trap for the unwary, is the tenant responsible? If not the tenant, then is the alleged negligence simply a wrong without a remedy? There is no need to reach such a result.

In the case now before us, the majority applies the old landlord-tenant rule and the "exclusive possession" aspect of it in a case where it need not apply. Again, we are not dealing with a landlord and a tenant but with a property owner and a person who is not a tenant. Not only does the majority apply a rule that we have questioned; it extends the rule to a situation to which it has not previously been applied.

I respectfully dissent.

Corbin, J., joins in this dissenting opinion.