915 So.2d 1285 (2005)
Merle RUSS, Jr., Appellant,
v.
Warren J. WOLLHEIM and Sheila H. Wollheim, his wife, Appellees.
No. 2D04-2900.
District Court of Appeal of Florida, Second District.
December 21, 2005.
*1286 Merle Russ, Jr., pro se.
D. James Kadyk of Smith, Clark, Delesie, Bierley, Mueller & Kadyk, Tampa, for Appellee.
WHATLEY, Judge.
Merle Russ, Jr., appeals the summary final judgment entered in favor of the Wollheims in his action against them individually for personal injuries he sustained on April 23, 1997, while descending a ladder on the premises of Dinettes Unlimited, Inc., during his employment with the corporation. Warren Wollheim is president and chief executive officer of Dinettes, and he and his wife Sheila own the real estate on which Dinettes is located. In his complaint, Russ alleged that the Wollheims were negligent per se for constructing the ladder, a stairwell, and a floor in violation of the Pinellas County Building Code.[1] He also alleged that they concealed the violation, that they created a dangerous condition, and that they breached their duty to warn him of said dangerous condition.
We review a summary final judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000).
In their motion for summary judgment, the Wollheims argued, citing Veterans Gas Co. v. Gibbs, 538 So.2d 1325, 1327 (Fla. 1st DCA 1989), and Haskell Co. v. Lane Co., 612 So.2d 669 (Fla. 1st DCA 1993), that they are merely the owners of the real estate occupied by Dinettes, that they leased the real estate to Dinettes pursuant to a commercial lease that surrendered *1287 complete possession and control of the premises to Dinettes, that all improvements to the real estate were constructed by Dinettes, and that as the owners and lessors of the premises upon which Dinettes was located, they had no liability to Russ, an invitee of Dinettes.
In Gibbs, 538 So.2d 1325, and Lane Co., 612 So.2d 669, the courts held that caveat lessee continues to apply in the context of a commercial lease. Caveat lessee
provides that once a landlord delivers possession and control of the leased premises, including the plumbing, drains, and appliances for heating, lighting and power to the tenant, the landlord is not liable for injury to the property or person of the tenant or those on the premises with the permission of the tenant, even though such injuries are attributable to defects in such apparatus, appliances or fixtures.
Gibbs, 538 So.2d at 1327.
In cases involving a lease, however, the legal relationship (including possession and control of the lessor over the property) between the owner and the property will not necessarily be totally severed. The extent of responsibility for injuries occurring on the property during the term of the lease will depend upon the extent the owner maintains a possessory interest or control over the instrumentality or land which contains a defect which is alleged to have been a proximate cause of the injuries suffered by a plaintiff.
Craig v. Gate Maritime Props., Inc., 631 So.2d 375, 377 (Fla. 1st DCA 1994) (citing Bovis v. 7-Eleven, Inc., 505 So.2d 661 (Fla. 5th DCA 1987)).
The Wollheims' motion for summary judgment states that the lease surrendered complete possession and control of the premises to Dinettes. Similarly, the Wollheims' affidavits filed in support of their motion state that "by way of the lease" they conferred "complete and exclusive possession and control" of the premises to Dinettes. However, the lease allows the lessee to "alter, add to and improve the Property subject to Lessor's prior written approval." Thus, "by way of the lease," the Wollheims retained a possessory interest or control over the very activity Russ alleged resulted in his injuries. See Craig, 631 So.2d at 377. Consequently, as a matter of law the Wollheims were not entitled to summary final judgment in Russ's premises liability action against them. See Fla. R. Civ. P. 1.510(c).
The Wollheims failed in another respect to carry their burden as the movants to demonstrate that they were entitled to summary judgment. The Wollheims attached to their affidavits the lease as well as the receipts and the copy of the check for the construction of the ladder. The receipts and the check show that Dinettes Unlimited was the customer and that it paid for the alterations on May 14, 1987, whereas the lease contains a date of execution of December 12, 1992. Thus, the Wollheims also failed to show that they had no interest in or control over the premises at the time of the construction of the ladder. Accordingly, we reverse the final summary judgment and remand for further proceedings consistent with this opinion.
Reversed and remanded.
DAVIS, J., Concurs.
ALTENBERND, J., Concurs with opinion.
ALTENBERND, Judge, Concurring.
I concur in this opinion. I write only to emphasize that we are not questioning the general vitality of the caveat emptor doctrine *1288 as it applies to commercial leases. See Lane Co., 612 So.2d 669 (certifying a question to the supreme court questioning the future application of this doctrine). The doctrine, however, is subject to some well-recognized exceptions. See Restatement (Second) of Torts §§ 357-62 (1965); see also Propst v. McNeill, 326 Ark. 623, 932 S.W.2d 766, 768 (1996); Deeter v. Dull Corp., Inc., 420 Pa.Super. 576, 617 A.2d 336 (1992).
The facts of this case are somewhat unusual and not well developed in the record. Mr. Russ apparently was employed as a manager of a furniture store operated by Dinettes Unlimited, Inc. The building for this furniture store was owned by Mr. and Mrs. Wollheim and leased to Dinettes Unlimited. Mr. Wollheim, however, is also the president and chief executive officer of Dinettes Unlimited. Thus, it appears that he was directly involved with these facilities on a regular basis in one or both of these capacities.
The record contains little evidence about the allegedly dangerous ladder. The complaint alleges that it was a "make-shift 2' × 4' ladder." It is unlikely that such a ladder would be regarded as a latent defect, but without further development in the record, we cannot conclude as a matter of law that the landlord owed no duty to repair this condition prior to this accident. The record suggests that the ladder was a serious violation of the building code and that Mr. Wollheim may have had actual knowledge of that fact even at the time it was constructed, which may have been in 1987.
No one argues in this case that Dinettes Unlimited has any liability beyond its obligation to provide workers' compensation benefits or that Mr. Wollheim has any liability as an officer of the employer. See § 440.11, Fla. Stat. (1997). On the other hand, if Mr. Wollheim was directly involved in the decision to construct a ladder instead of a stairwell in a building that he was leasing to his own corporation, on the basis of this limited record, we cannot rule out the possibility that he could be liable in tort to Mr. Russ.
NOTES
[1] Russ's complaint incorrectly alleges that the Wollheims' violation of the building code was negligence per se. A building code is designed to protect the general public rather than a particular class of individuals, and therefore, violation of a building code is merely evidence of negligence. Grand Union Co. v. Rocker, 454 So.2d 14 (Fla. 3d DCA 1984); see Lindsey v. Bill Arflin Bonding Agency Inc., 645 So.2d 565 (Fla. 1st DCA 1994); Liberty Mut. Ins. Co. v. Kimmel, 465 So.2d 606 (Fla. 3d DCA 1985). Therefore, Russ had to show more than that the Wollheims violated the building code to present a prima facie case of negligence.