# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D23-1205
Lower Tribunal No. 2015-001414-CA

_____

KEITH R.E. JOHNSON and KREJ LEASING, INC.,

Appellants,

v.

AKEEFE GARRETT,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
Chad K. Alvaro and Vincent Falcone, III, Judges.

April 4, 2024

STARGEL, J.

Appellants Keith R.E. Johnson and KREJ Leasing, Inc. "KREJ", challenge the final judgment entered after a jury verdict in favor of Appellee Akeffe on his complaint for negligent security arising from a shooting at a strip club in Orlando.[1] Appellants argue that the final judgment should be reversed because they lacked sufficient control over the premises to establish a duty of care toward Garrett. We

---

[1] This case was transferred from the Fifth District Court of Appeal to this Court on January 1, 2023.

agree and hold that based on the evidence presented at trial, Appellants were entitled to a directed verdict on Garrett's allegations of a breach of duty for failure to provide a reasonably safe premises. We reverse and remand for entry of a directed verdict in favor of Appellants.

Background

On February 11, 2013, Garrett visited "Flashdancers" strip club after a night of drinking. Upon his arrival, an armed guard was posted at the entrance to the club, and all guests were patted down before being admitted. No firearms were allowed to be carried inside the club. Shortly after entering the club, Garrett, who by his own admission was intoxicated, slapped a dancer on the buttocks and then turned his attention to a female patron whose companion, Thomas McCrimmon, did not appreciate the behavior. The two men exchanged words, then exchanged punches, and McCrimmon pulled out a pistol and shot Garrett in the abdomen. Garrett suffered serious injuries.

Two years later, Garrett filed suit against the following parties[2]: (1) Orlando Flashdancers, LLC ("Flashdancers"), the entity that owned and ran the day-to-day operations of the club; (2) Johnson, who owned the property upon which Flashdancers was located; and (3) KREJ, a corporate entity formed by Johnson to manage the property that leased the premises to Flashdancers. The suit claimed

---

[2] Garrett's first amended complaint named three additional entities which were later dropped. None of them play a significant role in this appeal.

2

damages based on the defendants' general breach of their duty to provide a reasonably safe premises for Garrett as a patron of the strip club. Garrett's suit did not include Elite Security Company, the entity hired by Flashdancers for security of the business, and he later filed a second amended complaint dropping Flashdancers as a defendant. Ultimately, this left only Johnson and KREJ as defendants in the suit at the time the case was tried.

After discovery, Garrett moved for partial summary judgment against Johnson and KREJ on the issue of whether there was non-delegable duty to invitees of Flashdancers to provide a reasonably safe business premises, including protection against third-party criminal attacks. The trial court granted the motion in part, finding that a landowner has a non-delegable duty to provide reasonable protection against third-party attacks on the premises, especially where the landowner retains at least some degree of control over the premises, and thus "any duty, if found by the jury to exist, was not delegated to [Flashdancers] by virtue of the lease of the premises." However, the court found disputed issues of fact regarding the existence of a duty based on the foreseeability of the shooting and denied summary judgment to that extent.[3] Appellants moved for reconsideration of the partial summary

---

[3] The partial summary judgment order found that the degree of control exercised by KREJ over the premises and the identity of interests between Johnson and KREJ rendered KREJ liable to the same extent as Johnson. Appellants raise this as a separate point of error on appeal; however, our holding renders the issue, and every other issue raised by Appellants, moot.

judgment order and for summary judgment in their favor, which the trial court denied. Based on much of the same evidence that would later be presented at trial, the trial court rejected the notion that Johnson's right to terminate the lease was the sole evidence of his control over the premises and concluded that he did not turn over complete possession and control of the premises.

At trial, multiple witnesses testified about security measures at the club and the relationship between Johnson, KREJ, and Flashdancers. William Sierer was hired by Flashdancers as a consultant and manager to handle the club's day-to-day operations. Sierer testified that Flashdancers contracted with Elite Security Company to provide security services at the club and there was a written policy governing safety, which included a prohibition against firearms inside the club. Sierer was responsible for ensuring that security personnel did their job, but final decisions regarding security were made by the club's owner, Carl Shedrick. Any problems with the operations of the club, including security, were handled in-house. According to Sierer, although Johnson came by to check on the property occasionally, he "hardly ever" saw Johnson. Sierer's only relationship with Johnson and KREJ was sending a rent check to their office every month.

Johnson testified that he purchased the subject property in 1989 from a Mr. Prigden. The warranty deed Johnson received contained various covenants that would terminate upon satisfaction or foreclosure of Johnson's mortgage on the property. The effect of these restrictions was to protect the grandfathered right to

4

conduct adult entertainment on the property. In 1994, Johnson formed KREJ to manage the various leases associated with the property, which also housed other businesses including an adult bookstore. In 2011, Johnson was introduced to Shedrick, who was interested in running an adult entertainment business on the property. After Shedrick obtained an adult entertainment license and a license to sell alcohol and tobacco, KREJ entered into a lease agreement with Flashdancers.[4]

The terms of the lease required the property to "be used solely for the purpose of continually operating an adult entertainment" venue and provided that the tenant's failure to do so would constitute a default and give KREJ "the absolute and immediate right to enter the premises and operate adult entertainment therein and/or provide independent contractors to perform adult entertainment." More specifically, it would be a violation for the lessee to fail to operate adult entertainment on the premises for twenty-four consecutive hours excluding legal holidays. The lease also granted KREJ or its agents the right to enter the premises at all reasonable times to inspect the property or make repairs and required the lessee to "comply with all governmental and quasi-governmental laws, ordinances, rules and regulations." The Lease Modification Agreement under which Flashdancers was named the lessee

---

[4] The Adult Entertainment License, which was entered into evidence, lists "Orlando Flashdancers, LLC" as the licensee. A renewal application for the license that was completed in 2012 lists Shedrick as the owner of Flashdancers and Sierer as the person with "authority to manage or control the day-to-day operation of the establishment," while Johnson is listed as the owner of the property.

further provided that the tenant "shall be responsible for all items of the premises, excluding roof repairs and exterior walls, but including plumbing, electrical and HVAC systems."[5]

During his testimony, Johnson explained that KREJ charged lower rent for the property because the tenant was responsible for maintaining the building and parking lot and paying the property taxes. He denied that he or KREJ shared in any of Flashdancers' profits. Johnson stated that he visited the property two to three times per year. When asked if there was security at the club on the night of the shooting, Johnson responded that he assumed so because most clubs would have someone working the door, but he did not know for sure. Throughout his testimony, Johnson repeatedly indicated that he had no personal knowledge of how Flashdancers ran the club because it was not his business.

At the close of Garrett's case-in-chief, Appellants moved for a directed verdict and for reconsideration of the prior summary judgment rulings, arguing that the evidence showed that neither Johnson nor KREJ had sufficient control over the premises to establish a duty of care. Appellants also challenged the prior ruling that KREJ and Johnson were one and the same, and that KREJ was liable to the same extent as Johnson. Counsel argued the ruling was a violation of due process since

---

[5] The original lease was entered between KREJ and "T.N.A. Topless Go Go, Inc. d/b/a Temptations Topless Go Go" in October 1997. The Lease Modification Agreement, which had an effective date of January 1, 2012, extended the term of the original agreement and named Flashdancers as the new lessee.

6

the issue was never pled, nor were they able to respond. In response, Garrett maintained that the negligence of Flashdancers was attributable to Appellants because they had a non-delegable duty to the club's business invitees. The trial court denied both motions and sent the case to the jury, which ultimately returned a verdict in favor of Garrett.

Standard of Review

Appellants contested Garrett's duty of care allegations at several stages of the proceedings below. While the trial court's initial ruling on the issue came at the summary judgment stage, Appellants later raised the same issue as grounds for a directed verdict. "[W]e review de novo the trial court's decision to grant partial summary judgment." *Restal v. Nocera*, 268 So. 3d 270, 272 (Fla. 5th DCA 2019) (citing *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000)); *see also R.J. Reynolds Tobacco Co. v. Grossman*, 96 So. 3d 917, 920 (Fla. 4th DCA 2012) ("The existence of a legal duty is purely a question of law and is subject to de novo review."). Additionally, "[t]he standard of review on appeal of the trial court's ruling on a defendant's motion for directed verdict is the same test used by the trial court in ruling on the motion." *Sims v. Cristinzio*, 898 So. 2d 1004, 1005-06 (Fla. 2d DCA 2005) ("In considering a motion for directed verdict, the court must evaluate the testimony in the light most favorable to the nonmoving party and every reasonable inference deduced from the evidence must be indulged in favor of the nonmoving party." (citations omitted)).

7

<u>Analysis</u>

Under Florida law, "the duty to protect third persons from injuries on the premises rests not on legal ownership of the premises, but on the rights of possession, custody, and control of the premises." *Wal-Mart Stores, Inc. v. McDonald*, 676 So. 2d 12, 15 (Fla. 1st DCA 1996) (first citing *Kline v. 1500 Mass. Ave. Apt. Corp.*, 439 F.2d 477, 481 (D.C. Cir. 1970); and then citing *Bovis v. 7-Eleven, Inc.*, 505 So. 2d 661, 663-64 (Fla. 5th DCA 1987)); *see also Competitive Softball Promotions, Inc. v. Ayub*, 245 So. 3d 893, 895 (Fla. 3d DCA 2018) ("The legal duty to protect invitees from injuries caused by third parties is tied to the defendant's control over the premises where the injury occurred."). In cases involving a leased property, "the extent of responsibility for injuries occurring on the leased premises during the term of the lease depends upon the extent the owner of the property maintains control over the premises." *Brown v. Suncharm Ranch, Inc.*, 748 So. 2d 1077, 1078 (Fla. 5th DCA 1999). Where a property owner surrenders complete possession and control of the premises to a tenant, the owner is not liable for injuries to third parties occurring on the premises. *Wal-Mart Stores, Inc.*, 626 So. 2d at 14. In short, the duty to protect others from injury on the premises "does not rest on legal ownership of the dangerous area but on the right to control access by third parties which right usually exists in the one in possession and control of the premises." *Bovis*, 505 So. 2d at 664; *see also* Restatement (Second) of Torts §§ 355, 360 (Am. L. Inst. 1965).

8

In the proceedings below, the trial court ruled that Appellants had a non-delegable duty to Flashdancers' business invitees under *U.S. Security Services Corp. v. Ramada Inn, Inc.*, 665 So. 2d 268 (Fla. 3d DCA 1995). In *Ramada*, the plaintiff was the victim of a third-party criminal attack while he was a business invitee of Ramada. *Id.* at 269. Ramada conceded that it owed a duty to the plaintiff to provide a reasonably safe premises, including reasonable protection against third-party criminal attacks. *Id.* at 270. However, Ramada argued that it could delegate that duty by hiring an independent contractor to provide the necessary security, thereby avoiding liability to its guests when the independent contractor provided inadequate security. *Id.* The Third District rejected this argument and held that while Ramada was free to contract out the performance of its duty to provide a reasonably safe environment for its guests, it could not delegate the ultimate legal responsibility for the proper performance of that duty. *Id.*

The facts before us do not align with those presented in *Ramada*. If Garrett had proceeded to trial against Flashdancers, which had then disclaimed liability based upon contracting with Elite Security Company for security services, an analysis similar to *Ramada* would be appropriate. Unlike *Ramada*, the present case involves a property owner and his corporate managing entity who are not the operators of the business, do not maintain control over decisions involving security, and did not contract with the company providing security. Whereas the property owner in *Ramada* was operating a business on the premises and contracted for the

9

performance of its duty to provide security to an independent contractor. The property owner in *Ramada* maintained the responsibility of oversight of its independent contractor, while Appellants had no responsibility to hire security, much less to oversee the responsibilities of the security contractor. Because the relationship between Appellants and Flashdancers differs in this respect from the relationship between the hotel and the security company in *Ramada*, the trial court's reliance on *Ramada* in concluding that Appellants owed a non-delegable duty to Flashdancers' business invitees was misplaced.

Instead, to determine whether Appellants owed a duty under the circumstances in this case, we look to case law involving facts where the owner of a commercial property has leased the premises to another. In *Brown*, a patron of the Dixie Doodle Lounge was fatally shot by another patron of the lounge. The lounge was located on property owned by Suncharm Ranch and leased on a month-to-month basis to Larry Simmons. *Brown*, 748 So. 2d at 1078. The decedent's estate sued Suncharm, Suncharm's president, and Simmons. *Id.* Suncharm moved for summary judgment, arguing that it could not be held liable because Simmons had sole control of the leased premises. *Id.* The Fifth District held that Suncharm was entitled to summary judgment. *Id.* at 1078-79. Significant to the court's decision was the fact that Simmons "was in complete control of the operation of the lounge," and "[t]he only control that Suncharm had was the right to terminate the lease upon fifteen days' notice." *Id.* at 1078. The Fifth District concluded that Suncharm's authority

10

to terminate the lease "does not constitute sufficient control over the leased premises for purposes of imposing liability." *Id.* at 1079.

Similarly, in *Jones v. Basha, Inc.*, 96 So. 3d 915 (Fla. 2d DCA 2011), Jones was the victim of an attempted carjacking outside a convenience store. *Id.* at 916. Jones filed suit against Basha, which she alleged was the owner of the store and surrounding property. *Id.* Basha moved for summary judgment, arguing that it had previously sold the business to Becker Enterprises and had no control over the operation of the store, and filed a lease agreement showing that the property had been leased to Becker. *Id.* While the lease did not contain specific language regarding the provision of security, it placed the responsibility for maintaining the premises exclusively on Becker. *Id.* The trial court granted summary judgment in favor of Basha, and the Second District affirmed, holding that there was no question of fact regarding whether Basha maintained control over the store:

> [Basha's president] testified that neither he nor Basha had any control over the operation of Central Food Market, and [Becker's president] testified that he ran Central Food Market's daily operations and was responsible for maintaining the premises. The fact that the lease did not specifically address security or responsibility for maintaining a safe premises does not create an issue of fact because the record establishes that Becker had this responsibility.

*Id.* at 917.

Here, the evidence shows that neither Johnson nor KREJ had control over the general operation of Flashdancers' business practices, and they were not involved with security. Sierer's testimony established that Flashdancers was responsible for

11

all decisions regarding security, including prohibiting firearms inside the club and hiring security personnel to conduct pat downs on guests entering the club.[6] While Garrett points to the lease provision granting KREJ the right to enter the premises and operate the club upon the lessee's failure to continually conduct adult entertainment as evidence that Appellants retained control over the property, the existence of a right to take control of the premises under default is not the same as actually exercising that control. Because there is no evidence that Flashdancers ever failed to continually operate adult entertainment on the premises, KREJ was never even in the position to exercise the rights outlined in that provision.

Garrett further argues Johnson and KREJ had sufficient control for the purpose of establishing liability based on the lease provision allowing KREJ or its agents to enter the premises to inspect the property or make repairs. This does not constitute sufficient control for purposes of establishing liability. *See Narvaez v. Pestana*, 780 So. 2d 267, 268 (Fla. 4th DCA 2001) ("By itself, a landlord's right to enter the premises and make repairs under a lease does not constitute control of the premises so as to impose on the landlord a duty to protect a tenant's patrons from the criminal or even negligent acts of third parties on the premises."). Unlike the situation in *Russ v. Wollheim*, 915 So. 2d 1285 (Fla. 2d DCA 2005), which Garrett

---

[6] While we recognize that portions of Johnson's testimony reflected his familiarity with the operation of adult entertainment venues in general, there is no indication that he had input in any decisions regarding Flashdancers' day-to-day operations, including security.

relies upon in his brief, any control KREJ retained to enter the premises to inspect the property or make repairs was completely unrelated to the injuries Garrett sustained in the shooting.[7]

Garrett also argues that the lease provision requiring the tenant to comply with local ordinances governing adult entertainment venues constitutes evidence of Appellants' control over the premises. But while compliance with local ordinances may have necessitated certain security measures at the club, we note that Flashdancers was required to comply with all governing laws and ordinances regardless of whether the lease said so. In any event, we reject the suggestion that a lease provision requiring a tenant to abide by the law—a term no doubt common to many commercial leases—should be treated as evidence of the landlord's control of the premises for purposes of imposing liability. To do so would risk eroding the established legal protections afforded to landowners who turn over complete possession and control of their properties to lessees.

## Conclusion

For the reasons outlined above, the trial court erred in granting partial summary judgment for Garrett on the duty element. Based on the evidence at trial,

---

[7] In *Russ*, the Second District held that a lease provision allowing the tenant to make improvements to the property subject to the landlords' approval precluded the entry of summary judgment on Russ's claim for injuries suffered while using a ladder that had been constructed on the property. 915 So. 2d at 1287. This was because under the lease, the landlords "retained a possessory interest or control over the very activity Russ alleged resulted in his injuries." *Id.*

when viewed in the light most favorable to Garrett, neither Johnson nor KREJ maintained sufficient control over the premises to establish a duty of care toward Garrett. We conclude that Appellants are entitled to a directed verdict. Accordingly, we reverse the final judgment and remand the case for the entry of a directed verdict in favor of Appellants.

REVERSED and REMANDED with instructions.

TRAVER, C.J., and GANNAM, J., concur.

Michael M. Brownlee, of The Brownlee Law Firm, P.A., Orlando, for Appellants.

Jeremy K. Markman, of King & Markman, P.A., Orlando, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF FILED