DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**XIULING HU,**
Appellant,

v.

**ANNA HUA, BIHN TEN DIEP,** and **LAURIS HUA,**
Appellees.

No. 4D2024-1364

[May 14, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Fabienne E. Fahnestock, Judge; L.T. Case No. CACE22009473.

Michael J. Pugh of Pugh Law Office P.A., Orlando, for appellant.

Daniel S. Weinger of Luks, Santaniello, Petrillo, Cohen, & Peterfriend, Fort Lauderdale, for appellees.

FORST, J.

Appellant/Plaintiff Xiuling Hu timely appeals the trial court's final summary judgment in favor of Appellees/Defendants Anna Hua, Bihn Ten Diep, and Lauris Hua (collectively, "the premises owners") on Hu's negligence claim and the denial of Hu's motion for rehearing.

Hu alleges she sustained injuries after slipping and falling while exiting an elevated shower on the leased premises. At the time, the leased premises were being operated as a massage therapy spa, but the premises owners did not own and operate the spa business. Because factual questions remain regarding control over the leased premises, notice, and the nature of the alleged defect, we reverse the summary judgment and remand for further proceedings. Additionally, because our summary judgment reversal moots the rehearing issue, we decline to address Hu's rehearing arguments.

**Background**

*Events Leading up to Hu's Slip and Fall*

The premises owners, through an LLC, entered into a lease agreement ("the Lease") with a tenant ("Tenant") regarding use of the leased premises. The leased premises were to be used as a massage therapy spa. After taking possession, Tenant had an elevated shower installed in what had been a half bathroom, located near the front reception area. The new shower required ascending a step to enter and descending a step to exit.

Tenant did not obtain the premises owners' written consent before altering the leased premises, even though the Lease prohibited Tenant from "cut[ting] or drill[ing] into, or secur[ing] any fixture, apparatus, or equipment of any kind to any part of the subject premises without first obtaining the written consent of the Landlord." If approval was obtained, the Lease obligated Tenant to provide "build-out plans for approval," and "a written description of the scope of work plus plans and schematics if available." No such information, detailed or otherwise, was provided to the premises owners.

Tenant subsequently assigned the Lease to two individuals who owned the spa business ("Spa Operator"). Premises co-owner Lauris Hua, as LLC manager, approved of the Lease assignment. Lauris Hua physically appeared at the leased premises when she signed the assignment, but she did not conduct a formal inspection at that time. While the Lease made the "tenant" responsible for most repairs, the Lease gave the premises owners "the right at all reasonable times to enter the premises to inspect, to maintain, to repair, or to make reasonable alterations to the premises." A different provision reiterated this right—allowing the premises owners to "go upon and inspect the subject premises and every part thereof at its option to make repairs, alterations, and additions . . . ." The assignment to Spa Operator was "subject to all the terms and conditions contained in the [L]ease."

### *Slip and Fall, Complaint, and Summary Judgment Filings*

After Spa Operator took over the leased premises, Hu used the shower for the first time. As Hu descended the step to exit, she lost her balance, slipped, and fell. Hu sustained injuries, including a fractured back, and then sued the premises owners and Spa Operator for negligence.[1] Hu's complaint alleged that the premises owners and Spa Operator failed to maintain the shower step so it was free from defects and/or dangerous conditions, safe to walk or stand on, and compliant with the building code.

Hu was deposed by the defendants. When asked whether she believed a liquid substance caused her to fall, Hu answered, "[p]artially, yes. And another reason was there is no anti-mat -- slippery mat on the step." Hu's

---

[1] Hu voluntarily dismissed her lawsuit with prejudice against Spa Operator.

deposition testimony indicated both a belief that a liquid substance played a role in her fall, as well as her recognition that the shower lacked an anti-slip mat and that the ingress/egress step was "too slippery," so she lost her balance. Moreover, prior to her deposition, Hu's answers to interrogatories expressed her belief that the shower was not designed properly and lacked anti-slip components including anti-slip mats and a handrail.

Spa Operator and the premises owners separately moved for summary judgment. As one ground, Spa Operator argued it lacked actual or constructive notice of the liquid substance—referencing portions of Hu's deposition in which she attributed her fall to a liquid substance. The premises owners adopted this argument and then asserted an additional ground in their written summary judgment motion: lack of possession or control of the premises. In support, the premises owners referenced the Lease and assignment to argue they owed no duty to Hu regarding maintenance of the leased premises.

Hu filed two affidavits in opposition to summary judgment, including her own. In her affidavit, Hu expressed that when she had stepped onto the shower step, she felt it "flex," which "caus[ed] [her] to become imbalanced and, because there was water on the step and no anti-slip mat or strip and no handrail, [she] slipped off the step landing on [her] back on the floor."

The other affidavit was that of a professional engineer, who had visited the leased premises and personally saw the shower. This expert opined that "the exit/entrance to the shower area is unsafe and provides limited accessibility." The expert explained that the step as constructed "creat[ed] a surface susceptible to deformation or breaking under force," and described how "[w]et locations must be constructed with slip resistant components with tested coefficient of friction." Although the expert was unable to test the step "resistivity coefficient of friction" at the time of his visit, he expressed how the shower as built did not comply with the Americans with Disabilities Act ("ADA") and Florida Building Code.

Moreover, Hu filed a written opposition, arguing that summary judgment was improper because: (1) her complaint was not limited to a transitory substance, but mentioned other defects; (2) the shower as constructed violated building codes and the ADA; and (3) the premises owners retained a possessory interest in the leased premises to inspect, which would have alerted them to Tenant's unapproved shower alteration. Hu also attached exhibits including Hu's deposition, Hu's answers to interrogatories, Tenant's deposition, premises owner Lauris Hua's deposition, and the two previously referenced affidavits.

### *Summary Judgment Hearing and Ruling*

At the outset of the summary judgment hearing, the trial court provided the following synopsis:

> [T]he real crux of the argument is that [the premises owners] did not have possession or control of the premises at the time that the incident happened, and therefore really had no duty to maintain or to warn [Hu] of any defects or dangerous conditions.

After hearing argument, the trial court granted the premises owners' summary judgment motion, reasoning:

> Looking at the evidence in the light most favorable to [Hu] as is required, I don't see how a reasonable jury could find in [Hu]'s favor based on the record presented.
>
> [Hu]'s deposition, I understand that she had an interpreter, but the question was asked repeatedly, "What caused you to fell [sic]? This is what caused you to fell [sic]?" She had ample opportunity to talk about a defect. Even without that, there is no record evidence that a defect in fact exists.
>
> While the shower may not be compliant with the ADA because it doesn't have grab bars or whatnot, even taking [Hu]'s argument as true that it was a flex that is the defect, those bars are not the defect. That's not what caused [Hu] to fall.
>
> But again, I don't see competent substantial evidence that there was a construction defect.

The trial court's written order echoed its oral ruling. Hu moved for rehearing, which the trial court denied. This appeal timely follows.

## Analysis

### *Summary Judgment in a Premises Liability Context*

A de novo standard of review applies to the trial court's order granting summary judgment. *Roberson v. Enter. Leasing Co. of Fla., LLC*, 364 So. 3d 1097, 1100 (Fla. 4th DCA 2023). When determining whether the movant is entitled to judgment as a matter of law, the trial court must view the evidence and the inferences drawn from that evidence in a light most favorable to the nonmovant. *See McKee v. Crestline Hotels & Resorts, LLC*, 376 So. 3d 758, 763 (Fla. 4th DCA 2024). The trial court should not grant

4

summary judgment if the evidence creates a "sufficient disagreement" such that a reasonable jury could return a verdict in the nonmovant's favor. *See Carpio v. W. Beef of Fla., LLC*, 384 So. 3d 192, 193 (Fla. 4th DCA 2024) (citation omitted).

"A negligence claim consists of four elements: (1) a duty recognized by law; (2) breach of the duty; (3) proximate causation; and (4) damages." *Serrano v. Dickinson*, 363 So. 3d 162, 165 (Fla. 4th DCA 2023). In a premises liability action, the plaintiff is required to prove these negligence elements and "the added elements of possession/control of the premises, and notice of the dangerous condition." *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 128 (Fla. 4th DCA 2020) (quoting *Bechtel Corp. v. Batchelor*, 250 So. 3d 187, 200 (Fla. 3d DCA 2018) (Emas, J., dissenting)).

Hu and the premises owners agree that Hu was an invitee when she slipped and fell. A premises owner or occupier owes two independent duties to an invitee: "(1) to maintain the premises in a reasonably safe condition, and (2) to give warning of concealed perils." *Burton v. MDC PGA Plaza Corp.*, 78 So. 3d 732, 734 (Fla. 4th DCA 2012). A discharge of the duty to warn will not discharge the duty to maintain the premises in a reasonably safe condition. *See id.*

### *Possession/Control of the Leased Premises*

As the trial court indicated, the "real crux" of the premises owners' basis for seeking summary judgment was their lack of possession or control of the leased premises, which discharged their duty to maintain and the duty to warn. We determine a genuine dispute of material fact exists regarding the degree of control which the premises owners exercised over the leased premises when Hu slipped and fell, thus precluding summary judgment.

"Under Florida law, 'the duty to protect third persons from injuries on the premises rests not on legal ownership of the premises, but on the rights of possession, custody, and control of the premises.'" *Johnson v. Garrett*, 386 So. 3d 1023, 1027 (Fla. 6th DCA 2024) (quoting *Wal-Mart Stores, Inc. v. McDonald*, 676 So. 2d 12, 15 (Fla. 1st DCA 1996)). When a lease agreement is involved:

> [T]he legal relationship (including possession and control of the lessor over the property) between the owner and the property will not necessarily be totally severed. The extent of responsibility for injuries occurring on the property during the term of the lease will depend upon the extent the owner maintains a possessory interest or control over the instrumentality or land which contains a defect which is

alleged to have been a proximate cause of the injuries suffered by a plaintiff.

*Haines v. Dania Corner, Inc.*, 920 So. 2d 1289, 1290 (Fla. 4th DCA 2006) (quoting *Russ v. Wollheim*, 915 So. 2d 1285, 1287 (Fla. 2d DCA 2005)).

The duty to exercise reasonable care in maintaining the premises is not necessarily limited to one person or entity. *See City of Naples v. Chops City Grill, Inc.*, 331 So. 3d 291, 294 (Fla. 2d DCA 2021) ("Two parties may have a duty of care when both share control of the premises."). A question of material fact may exist regarding control of the premises when, under a lease, the landlord retains a possessory right to enter and inspect the leased premises or the tenant must obtain the landlord's approval before altering the leased premises. *Compare Wimbush v. Gaddis*, 713 So. 2d 1107, 1108 (Fla. 4th DCA 1998) (reversing summary judgment in lessor's favor in a slip and fall case when the lessor had a right of entry and inspection but the lessee was responsible for routine maintenance and repairs), *and Russ*, 915 So. 2d at 1286–87 (reversing summary judgment in lessor's favor when the written lease required the lessee to obtain the lessor's written approval before altering the premises and the plaintiff's injury was related to the lessee's alteration of the premises), *with Haines*, 920 So. 2d at 1290–91 (affirming summary judgment in the lessor's favor when the undisputed evidence revealed the lessor retained no right of entry or inspection upon relinquishing control to the lessee and the lessee was responsible for interior repairs and maintenance).

Undisputedly, the shower in which Hu slipped and fell was not part of the leased premises when Tenant signed the Lease, but was a subsequent alteration that Tenant unilaterally made without acquiring the premises owners' written consent. Here, *Wimbush* and *Russ* support remand, because the premises owners retained the right to enter, inspect, maintain, and repair the leased premises, and required Tenant to obtain their written consent before altering the premises.

Specifically, the Lease's "Right of Entry" provision provided the premises owners with the "right at all reasonable times to enter the premises to inspect, to maintain, to repair, or to make reasonable alterations to the premises." A different provision titled "Rights of Landlord," reserved the following right: "At all reasonable times, by itself or its duly authorized agents, to go upon and inspect the subject premises and every part thereof at its option to make repairs, alterations, and additions to the subject premises or the building of which the subject premises are a part." *See Wimbush*, 713 So. 2d at 1108.

Moreover, not only was Tenant required to obtain the premises owners' "written consent" before "alter[ing], improv[ing], or add[ing] to the subject premises," but an approved alteration required Tenant to provide "build-out plans for approval" and "a written description of the scope of work plus plans and schematics if available" to the premises owners. Thus, the premises owners' possessory interest not only covered alteration approval, but some degree of input regarding alteration details and specifics. *See Russ*, 915 So. 2d at 1287.

The Lease's provisions regarding right of entry and alterations remained in effect after the Lease was reassigned to Spa Operator and when Hu sustained her injuries. Accordingly, based on the foregoing facts, the extent of the premises owners' control of the leased premises is a genuine factual dispute for the jury to determine. *See Fla. Power & Light Co. v. Morris*, 944 So. 2d 407, 410 (Fla. 4th DCA 2006) ("Generally, control and responsibility are issues of fact to be resolved by the jury.").

### *Notice*

Additionally, a genuine factual dispute exists regarding the premises owners' notice of the shower, and more specifically, the step and the shower's lack of anti-slip components.

Ordinarily in a premises liability case, the plaintiff "must show the defendant had actual or constructive notice of the dangerous condition on its premises." *Eckert Realty Corp. v. Strazzeri*, 396 So. 3d 220, 221 (Fla. 4th DCA 2024) (quoting *Dudowicz v. Pearl on 63 Main, Ltd.*, 326 So. 3d 715, 719 (Fla. 1st DCA 2021)). "A premises owner has constructive knowledge of a hazard when, if he exercised reasonable care, he would have known of the hazard." *Id.* "Constructive knowledge may be inferred if the dangerous condition existed for such a length of time that in the exercise of ordinary care, the premises owner should have known of it and taken action to remedy it." *Khorran v. Harbor Freight Tools USA, Inc.*, 251 So. 3d 962, 965 (Fla. 3d DCA 2018).

Here, one of the premises owners (Lauris Hua) admitted during her deposition that her inspection of the premises had predated purchase and execution of the Lease. When the premises owners and Tenant executed the Lease, the half bathroom had not yet been converted into an elevated shower room where Hu later slipped and fell. In her deposition, Tenant admitted she had hired someone to install the elevated shower, which lacked handrails, and the shower had been built before the Lease was assigned to Spa Operator. Lauris Hua admitted she had been physically present at the leased premises when the Lease was assigned, but did not

7

conduct an inspection.[2] Presumably, Lauris Hua would have discovered the shower's existence and any anti-slip deficiencies *before* Hu slipped and fell. In fact, only after Hu had filed the lawsuit did Lauris Hua learn the shower had been installed—expressing she was "shocked" to see the half bathroom's original plumbing fixtures had been removed. When asked why she had not noticed the shower earlier, Lauris Hua responded that she "wasn't looking for it."

Tenant's deposition revealed that a different premises owner (Anna Hua) had entered the leased premises before Tenant assigned the Lease to Spa Operator. Tenant could not recall specifics surrounding Anna Hua's visit, but stated that Anna Hua "should" have seen the shower located near the front reception area of the leased premises.

These facts, combined with the premises owners' possessory interest in the premises, create genuine factual issues about the premises owners' notice of the shower and their duty to maintain and remedy, including potential shower renovation or removal. *See Food Lion, LLC v. Monument/Julington Assoc. Ltd. P'ship*, 939 So. 2d 1106, 1108 (Fla. 1st DCA 2006) (explaining how the jury decides the issue of whether a landlord has breached the duty to maintain the premises); *Freeman v. BellSouth Telecomms., Inc.*, 954 So. 2d 45, 47 (Fla. 1st DCA 2007) (discussing how "constructive notice of the need to take a [remedial] action" was a factual issue for the jury).

### Nature of Defect

Genuine factual questions remain regarding the nature of the defect, including if Hu's slip and fall was attributed to a substance, a construction defect including anti-slip components, or a combination of the two.

Besides arguing lack of possession or control, the premises owners adopted Spa Operator's summary judgment argument regarding lack of actual or constructive knowledge of a *substance.* This was the only other written ground specified in the premises owners' motion. However, Hu's evidence opposing the premises owners' summary judgment motion revealed that while Hu believed a substance had played a role in her slip and fall, she did not attribute her fall solely to a transitory substance.

For instance, in Hu's deposition, she expressed her belief at multiple points that the lack of an anti-slip mat had contributed to her to fall. In her answers to interrogatories, which predated her deposition and the

---

[2] Lauris Hua's deposition also revealed that she had entered the leased premises before the Lease was assigned to address a Hurricane Irma-related roof leak, but the record is not clear if the shower had already been constructed by that time.

premises owners' motion for summary judgment, Hu claimed the shower step had not been designed correctly and the shower lacked anti-slip components including anti-slip mats and a handrail. She later expressed in an affidavit that the step had "flexed" when she stepped on it while exiting the shower.

Hu's expert, a professional engineer, opined in his affidavit that the step as constructed was susceptible to "deformity, flexing or breaking under force." Following his personal observation of the shower and step, the expert concluded that "the exit/entrance to the shower area is unsafe and provides limited accessibility." While the expert was unable to test the "slip resistivity coefficient of friction of the tile surface" at the time of his visit, he explained how "[w]et locations must be constructed with slip resistant components with tested coefficient of friction." The expert cited the 2017 Sixth Edition Florida Building Code and the Code of Federal Regulations—ultimately expressing his belief that the shower as built "does not comply with the current codes, ADA and Florida Building Code Sixth Edition (2017) accessibility." *See Krueger v. Quest Diagnostics, Inc.*, 280 So. 3d 518, 520 (Fla. 2d DCA 2019) ("Numerous courts have recognized that a jury in a premises liability case may consider building code provisions in determining whether a defendant complied with a common law duty of care."); *see also Dudowicz*, 326 So. 3d at 720 (discussing how a building code violation "constitutes prima facie evidence of negligence, but does not establish negligence per se").

Viewing this evidence in a light most favorable to Hu, as required, we disagree with the trial court's assessment that "there is no competent substantial record evidence that a construction defect exists." *See Slaats v. Sandy Lane Residential, LLC*, 59 So. 3d 320, 321 (Fla. 3d DCA 2011) (reasoning that a plaintiff's evidence was sufficient to defeat summary judgment when she presented testimony about her inability to see a step and an expert's affidavit about how the step created a hidden, unexpected drop). The jury should decide whether a shower defect existed, and if so, whether that defect caused Hu to slip and fall.

## Conclusion

Because genuine issues of material fact remain regarding control, notice, and the nature of the defect, we reverse the trial court's entry of final summary judgment in the premises owners' favor and remand for further proceedings.

*Reversed and remanded.*

WARNER and CONNER, JJ., concur.

9

* * *

*Not final until disposition of timely filed motion for rehearing.*